**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIAM SNYDER,

                          Plaintiff,

        - v -                                      Civ. No. 9:09-CV-1364
                                                                               (GLS/RFT)

CINDY LAW, *P.A., CNYPC*; DR. YOUNG CHU,
*Psychiatrist, CNYPC*,

                          Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

WILLIAM SNYDER
Plaintiff, *Pro Se*
93-B-2024
Sullivan Correctional Facility
Box 116
Fallsburg, New York 12733

HON. ANDREW M. CUOMO                CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff William Snyder brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging Defendants violated his Eighth Amendment rights while he was admitted to the Central New York Psychiatric Center (CNYPC). Dkt. No. 1, Compl. Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Dkt. No. 10, Defs.' Mot. Despite being granted an extension of time, Plaintiff has failed to respond to the Motion. *See* Text Order, dated Apr. 7, 2010. Instead, Plaintiff filed another Motion for Appointment of Counsel. Dkt. No. 20. For the reasons stated herein, it is

recommended that Defendants' Motion be **granted** and the entire Complaint be **dismissed**.

## I. BACKGROUND

The following facts are derived from the Complaint which, in accordance with the applicable standard of review, this Court must accept as true. *See infra* Part II.A.

Plaintiff suffers from schizoaffective disorder.[1] Compl. at Facts ¶ 6. On or about May 27, 2009, Plaintiff was admitted to CNYPC, at which point he explained to Defendant Dr. Chu, a psychiatrist employed by CNYPC, that his psychiatric medication, Risperidol®,[2] was not working. *Id*. at Facts ¶ 1. Dr. Chu prescribed "Clazerol"[3] in addition to Risperidol®. *Id*. at Facts ¶ 2. Plaintiff took the newly prescribed medication for about two weeks, during which time he experienced side effects such as "sleeping all day, drooling on [himself,] and urinating on [himself] while [he] slept." *Id*. at Facts ¶ 3. Plaintiff relayed his dissatisfaction with Clozaril® to Dr. Chu and sought new medication. *Id*. at Fact ¶¶ 3 & 5. Plaintiff unilaterally discontinued taking Clozaril® because of the undesirable side effects. Thereafter, during his four and one-half month stay at CNYPC, Plaintiff engaged in life-threatening, self-mutilation, including cutting himself, swallowing metal pieces, and swallowing half of a slipper. *Id*. at Facts ¶ 4.

The first cutting incident occurred on an unspecified date, and resulted in five staples being

---

[1] In accordance with Federal Rule of Evidence 201, the Court takes judicial notice that schizoaffective disorder is "a diagnostic category for mental disorders that have features of both schizophrenia and mood disorders (mania and depression). DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 495 (28th ed. 1994); *Wachtmeister v. Swiesz*, 2002 WL 1585526, at * 2 (N.D.N.Y. June 12, 2002) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), regarding what documents a court can take into consideration in ruling on a motion to dismiss); *see also Ariola v. Onondaga County Sheriff's Dep't*, 2007 WL 119453, at *7 n.61 (N.D.N.Y. Jan. 10, 2007) (citing cases regarding judicial notice).

[2] Risperidol® is an "atypical antipsychotic indicated . . . for the treatment of schizophrenia." PHYSICIANS' DESK REFERENCE 2682 (64th ed. 2010).

[3] It appears, upon information and belief, that Plaintiff was prescribed "Clozaril®," which is prescribed for the treatment of schizophrenia. *See* http://www.clozaril.com. The Court similarly takes judicial notice of this fact and will also refer to this medication by its proper spelling.

placed on Plaintiff's stomach. *Id*. at Facts ¶ 5. After this event, Dr. Chu did not alter Plaintiff's medication, nor did Plaintiff resume taking the Clozaril®. *Id*. Plaintiff then removed the staples from his stomach because the demons in his stomach demanded to be freed. *Id*. at Facts ¶ 6. After this event, Dr. Chu did not alter Plaintiff's medication. *Id*. Two weeks later, in an effort to free the demons, Plaintiff cut his stomach to the point where his intestines were "hanging out." *Id*. at Facts ¶ 7. On July 27, 2009, with an aim toward freeing the demons, Plaintiff swallowed four pieces of sharp metal and cut his stomach. *Id*. at Facts ¶ 8. These dire, self-inflicted injuries resulted in Plaintiff undergoing a hernia operation, an appendectomy, and his intestines were cut open to remove the metal. *Id*. Dr. Chu did not alter his medication, but she and Defendant Cindy Law, P.A., directed that Plaintiff sleep on a mattress on the floor for three weeks. *Id*. at Facts ¶¶ 9 & 12. Plaintiff asserts he suffered excruciating pain any time he sought to stand up and that he should have instead been directed to sleep on a medical bed. *Id*. at ¶ 12. From August 10, 2009 through August 24, 2009, Plaintiff experienced auditory hallucinations, which Dr. Chu refused to address. *Id*. at Facts ¶ 10. On August 24, 2009, at the direction of the demons, Plaintiff swallowed half of a slipper. *Id*. Because of his recurrent self-mutilation, Plaintiff was isolated in a rubber room for forty-three days.[4] *Id*. at Facts ¶ 11. After this last episode, Dr. Chu prescribed Plaintiff Zyprexa®.[5] *Id*. at Facts ¶ 13. After taking Zyprexa® for one week, Plaintiff no longer heard the demons or had thoughts of cutting the demons out of his stomach. *Id*.

---

[4] It is not clear when this protective measure was put into effect.

[5] Zyprexa® is an "atypical antipsychotic" used to treat a variety of disorders, including schizophrenia. PHYSICIANS' DESK REFERENCE 1984 (64th ed. 2010).

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129

S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B. Eighth Amendment

Liberally construing Plaintiff's Complaint, it appears that he charges Defendants Chu and Law with violating his Eighth Amendment rights by failing to treat his mental disorder with the correct medication and by forcing him to sleep on a mattress on the floor during his recuperation

from surgery.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

This standard contains both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

For purposes of the present Motion, Defendants concede that Plaintiff's psychiatric condition and self-injurious behaviors constitute serious medical needs. Dkt. No. 10-1, Defs.' Mem. of Law, at pp. 5-6. They contest, however, that Plaintiff adequately stated a claim for deliberate indifference

of those serious medical needs.

Plaintiff's Complaint is satiated with factual allegations that ineluctably shock the conscience, but nevertheless fail to state a cognizable Eighth Amendment claim. Unfortunately for Plaintiff, the *fait de compli* plaguing his case is his admission that he refused to take the medication prescribed to him by Dr. Chu. In effect, because Plaintiff disagreed with Dr. Chu's clinical judgment, he took his treatment regiment into his own hands by unilaterally opting to discontinue his prescribed medicine and endure psychotic episodes that resulted in gruesome self-mutilation rather than face the relatively benign side effects of the medication prescribed by Dr. Chu. A prisoner who declines medical treatment cannot turn around and sue the medical professional whose judgment the prisoner has questioned and even defied. *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming lower court ruling that a prisoner who declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference); *Hardy v. Diaz*, 2010 WL 1633379, at *6 n.12 (N.D.N.Y. Mar. 30, 2010) (noting that skipping medical appointments and failing to comply with treatment directions can undermine an Eighth Amendment medical indifference claim); *Guarneri v. Hazzard*, 2010 WL 1064330, at *13 (N.D.N.Y. Mar. 22, 2010) ("Plaintiff's history of refusing to comply with the directions of the medical staff and physicians undermines his claims of deliberate indifference.") (citations omitted); *Brown v. White*, 2010 WL 985184, at *7 (N.D.N.Y. Mar. 15, 2010) (Sharpe, D.J., adopting Rep. Rec.) ("The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.") (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Amin v. County of Onandaga*, 2006 WL 1650764, at *8 (N.D.N.Y. June 13, 2006) (noting that plaintiff's non-compliance with medical advice and treatment provided

an additional ground for dismissing his medical indifference claim).

While it is somewhat unclear whether Dr. Chu was aware that Plaintiff discontinued his prescribed medication, Plaintiff concedes that he received treatment in response to his self-mutilation, including life saving surgeries as well as isolation in a rubber room, it just wasn't the treatment he preferred.[6] The Second Circuit has long adhered to the principle that a prisoner does not have the right to the treatment of his choice, so long as the treatment provided is adequate. *Chance v. Armstrong*, 143 F.3d at 703 (citing *Dean v. Coughlin*, 804 F.2d at 215). Furthermore, "prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates." *LaFave v. Clinton County*, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citing *Murphy v. Grabo*, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998)); *see also Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) ("[P]rison officials and medical personnel have wide discretion in treating prisoners, and *Section 1983* is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons.") (internal quotation marks and citation omitted) (emphasis in original). In fact, if the medical treatment concerns "the care and safety of patients," then there is a "'presumption of correctness.'" *Ifill v. Goord*, 2004 WL 1663994, at *3 (quoting *Perez v. County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)). It is not within this Court's province to dictate to a medical professional the appropriate course of treatment. It is clear, however, that Plaintiff's injuries are directly attributable to his decision to disrupt and undermine the medical care being provided to him by ceasing his medication. An Eighth Amendment claim cannot be premised on such facts that have

---

[6] Within his Complaint, Plaintiff mentions, without clear context, that, over his objections, he was ordered by a court to take medication. Compl. at Facts ¶ 9. He does not specify who obtained the court order nor what medication was the subject of such order.

been widely rejected in this District. *See Jones v. Smith*, 784 F.2d at 151-52; *Hardy v. Diaz*, 2010 WL 1633379, at \*6 n.12; *Guarneri v. Hazzard*, 2010 WL 1064330, at \*13; *Brown v. White*, 2010 WL 985184, at \* 8 & 11; *Amin v. County of Onandaga*, 2006 WL 1650764, at \*8; *see also Turner v. White*, 443 F. Supp. 2d 288, 296 (E.D.N.Y. 2005) ("[I]n order to establish his claim for damages under Section 1983, plaintiff must establish that defendants' actions were a proximate cause of plaintiff's alleged injuries.").

With regard to Defendant Law, the sole allegation of wrongdoing concerns Plaintiff's restriction to a mattress on the floor following life-saving surgery. Plaintiff complains that he was not placed in a medical bed. Such an allegation hardly rises to an Eighth Amendment claim, especially when you consider the danger Plaintiff clearly posed to himself.

### C. Appointment of Counsel

On November 4, 2010, Plaintiff filed his third Application Seeking the Appointment of Counsel. Dkt. No. 20. In a previous Order denying Plaintiff's request for counsel, we stated the following:

> Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. The threshold consideration in ruling on such an application is a showing of some likelihood of merit. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1980).

Dkt. No. 18 at p. 1.

At that point, the Defendants' Motion to Dismiss was awaiting a decision, and so we denied Plaintiff's request for counsel without prejudice because "[n]o determination as to the possible merit of Plaintiff's claims" could be made. *Id*. at pp. 1-2. Now, however, we have reviewed Plaintiff's claims and find them to be, on their face, without merit. Thus, we deny Plaintiff's request for

appointment of counsel. Dkt. No. 20.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 10) be **GRANTED** and the Complaint be **DISMISSED**; and it is further

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the Plaintiff by certified mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: December 21, 2010
      Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge